UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY DOCKET UNIT

2026 JUL 22  AM 9: 32

| | |
|---|---|
| MAYRA MATOS,<br><br>*Plaintiff,*<br><br>-against-<br><br>STATESIDE FORMING INC. and COLM GERARD GRIFFIN,<br><br>Individually<br><br>*Defendants.* | Civil Action No. _____<br><br>**COMPLAINT AND**<br><br>**JURY DEMAND**<br><br>**JURY TRIAL DEMANDED** |

### NATURE OF THE ACTION

1. Plaintiff Mayra Matos, proceeding pro se, brings this action against Stateside Forming Inc. and its owner and Chief Executive Officer, Colm Gerard Griffin, to recover unpaid overtime wages, earned commissions, unpaid vacation compensation, statutory damages, and relief for retaliation following Plaintiff's written complaints about withheld wages.

### PARTIES

2. Plaintiff Mayra Matos is an individual residing in Stony Point, Rockland County, New York.

3. Plaintiff worked for Stateside Forming Inc. from August 4, 2022 through May 19, 2026.

1

4. Defendant Stateside Forming Inc. is a corporation organized under Delaware law that conducts business at 210 Beach Road, West Haverstraw, New York 10993.

5. Defendant Colm Gerard Griffin is an individual who owned and served as Chief Executive Officer of Stateside Forming Inc.

6. Griffin exercised operational control over Plaintiff's employment. Among other things, he participated in compensation decisions, personally offered the commission arrangement described below, supervised company operations, made the decision to terminate Plaintiff, and presented the release-conditioned severance proposal.

7. Stateside and Griffin each acted as Plaintiff's employer within the meaning of the Fair Labor Standards Act and the New York Labor Law.

## JURISDICTION AND VENUE

8. This Court has federal-question jurisdiction under 28 U.S.C. Section 1331 because Plaintiff asserts claims under the Fair Labor Standards Act, 29 U.S.C. Sections 201 et seq.

9. This Court has supplemental jurisdiction under 28 U.S.C. Section 1367 over Plaintiff's related New York claims because they arise from the same employment relationship and common nucleus of operative facts.

10. Venue is proper in the Southern District of New York under 28 U.S.C. Section 1391(b)(2) because all or substantially all of the events and omissions giving rise to Plaintiff's claims occurred in Rockland County, New York, within this District.

11. During the relevant period, Stateside employed Plaintiff and other workers and sold and rented forming and shoring products, including goods and materials that moved in interstate commerce. In performing her bookkeeping and collection-support duties,

2

Plaintiff regularly handled records, communications, transactions, and payments involving out-of-state customers and interstate commerce.

12. Upon information and belief, Stateside's annual gross volume of sales made or business done was not less than $500,000 during the relevant period.

## FACTUAL ALLEGATIONS

13. Plaintiff performed clerical, bookkeeping, payroll timekeeping, data-entry, deposit, customer-collection, and related operational-support work. Plaintiff reported to manager David Gallagher, had no direct reports, and did not supervise employees. She did not hire, fire, discipline, or promote employees; make recommendations given particular weight concerning such decisions; formulate corporate policy; direct a department; bind Defendants; or exercise independent managerial discretion over matters of significance.

14. Defendants required Plaintiff to follow established operational procedures but nevertheless classified her as exempt and paid her a salary without overtime compensation.

15. Plaintiff's annual salary was $60,000 when she began employment. An orally communicated increase to $70,000 took effect in July 2024.

16. Defendants required Plaintiff to record her working time through Paychex and therefore had contemporaneous notice of her recorded hours.

17. Plaintiff worked more than forty hours in numerous individual workweeks but was not paid one and one-half times her regular rate for the hours above forty.

18. Examples of recorded workweeks in which Plaintiff worked more than forty hours include November 6-10, 2023, when she recorded approximately 48.90 hours, and January 5-9, 2026, when she recorded approximately 49.65 hours. These examples are illustrative, not exhaustive. The total unpaid overtime hours and compensation will be determined from Defendants' complete time and payroll records.

19. From August 4, 2022 through approximately May 31, 2023, Defendants did not provide Plaintiff with itemized wage statements and failed to preserve or provide complete time records for portions of that period.

20. Throughout Plaintiff's employment, Defendants paid her only once per month even though her actual duties were clerical and nonmanagerial.

### THE PRIOR BONUS AND LATER COMMISSION AGREEMENT

21. Before the commission agreement, Defendants communicated and implemented changes to Plaintiff's compensation orally, including the July 2024 salary increase from $60,000 to $70,000 and the $650 quarterly collections bonus paid with her October 2024 wages. Defendants supplied a written explanation of the bonus's discretionary terms only after Plaintiff requested clarification in February 2025.

22. On December 12, 2025, after asking what bonus Plaintiff was receiving, Griffin told her that her compensation would be one percent of receivables beginning in January 2026. Griffin declined Plaintiff's suggestion that the rate be applied retroactively.

23. Unlike the earlier $650 bonus, Griffin did not describe the one-percent commission as discretionary, reserve a right to cancel it after the receivables were generated, exclude any category of receivables, or provide a written agreement.

4

24. Plaintiff contemporaneously recorded the one-percent rate, its January 2026 effective date, and company receivables information in a WhatsApp note.

25. Plaintiff accepted and relied on Griffin's promise by continuing to perform the collections and receivables work and by arranging her financial affairs in anticipation of the promised compensation.

## WITHHOLDING OF COMMISSIONS AND TERMINATION

26. Plaintiff's Q1 2026 commission report identified gross receivables totaling $937,378.48. Applying the agreed one-percent commission rate, Plaintiff earned $9,373.78, rounded to the nearest cent.

27. On April 23, 2026, Chief Financial Officer Eric Lippincott told Plaintiff that the April 29 payroll information supplied by Audrey Griffin reflected only a $650 discretionary bonus and did not include the commission. Plaintiff informed Griffin that the commission was not reflected in payroll. Griffin did not deny the one-percent arrangement; instead, he stated that he had not informed Audrey about it and directed Plaintiff to prepare and submit a commission report. Plaintiff submitted the requested report that day, documenting the Q1 receivables and corresponding commission.

28. In a later telephone discussion, Lippincott stated that receivables were low and asked whether Plaintiff would accept a one-half-percent rate. Plaintiff responded that she was willing to negotiate a different rate for the second quarter and going forward, but that the first-quarter commission had been earned at one percent and was non-negotiable.

29. Defendants did not pay either the one-percent commission or the $650 bonus reflected in the payroll information. They delayed responding and attempted, after the work was

completed, to characterize the commission as discretionary. From April 28 through May 14, 2026, Plaintiff repeatedly objected in writing to Defendants' withholding of the commission, explaining that it was determined by the agreed formula of one percent of receivables, had been earned through her completed work on the covered receivables, and was not subject to Defendants' discretion after it was earned. Plaintiff demanded payment.

30. On May 19, 2026, Griffin responded in the commission email thread that the parties would meet at 4:00 p.m. to "discuss the matter below." Plaintiff attended the meeting with her commission report.

31. Within approximately twenty seconds after the meeting began, and before discussing the merits of the commission dispute or substantively reviewing the report and its calculations, Griffin terminated Plaintiff effective immediately. Defendants had already prepared a termination letter and a general release containing a handwritten proposed payment of $13,000.

32. Griffin identified no specific performance deficiency and stated that there was generally nothing Plaintiff could have done differently. He attributed the termination to restructuring the finance function and stated that he intended to handle that function himself.

33. Griffin offered a single $13,000 payment conditioned on Plaintiff signing the general release. When Plaintiff distinguished the first-quarter commission from severance, Griffin stated that she could 'take the 9 out and leave the balance at 4,' but Defendants did not separately tender the commission.

6

34. Plaintiff declined to sign and maintained that the commission had already been earned. Defendants did not agree to pay it separately.

35. Defendants' own Employee Handbook stated both that annual vacation was granted in a lump sum at the beginning of each calendar year and that unused vacation generally would be forfeited at separation unless state law dictated otherwise. In May 2026, Lippincott informed Plaintiff that company records showed eight accrued vacation days. Defendants paid two of those days at separation but withheld six. By paying two days, Defendants treated the accrued vacation as payable but did not provide a consistent basis for paying only part of the eight-day balance. The six unpaid days are preliminarily valued at $1,615.38.

36. On May 27, 2026, Plaintiff rejected the proposed agreement and demanded the $9,373.78 first-quarter commission, the additional commission earned from April 1 through May 19, 2026, and payment for the six vacation days. Defendants did not respond or pay those amounts; the additional commission is ascertainable from their receivables records.

37. The timing of Plaintiff's written wage complaints and termination, the meeting's stated purpose, the termination before substantive review of her report, the prepared termination and release documents, and the single conditional $13,000 offer support an inference that Defendants terminated Plaintiff because she asserted her right to earned wages.

38. As a result, Plaintiff suffered unpaid wages, lost employment compensation and benefits, financial hardship, and emotional distress.

## COUNT I - UNPAID OVERTIME - FAIR LABOR STANDARDS ACT

## VIOLATION OF 29 U.S.C. SECTION 207(a)(1)

39. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

40. Plaintiff was a covered employee, and Stateside and Griffin were Plaintiff's employers, within the meaning of the FLSA.

41. Plaintiff's actual primary duties did not satisfy the executive, administrative, or professional exemptions.

42. Defendants knew Plaintiff worked more than forty hours in individual workweeks because they required Paychex time entries and supervised her work, but they did not pay the overtime premium required by 29 U.S.C. Section 207(a)(1).

43. Defendants' conduct was willful because they had access to Plaintiff's recorded hours, assigned and controlled her nonmanagerial duties, and continued treating her as exempt without paying recorded overtime.

44. Plaintiff seeks federal overtime for all timely workweeks within the applicable limitations period, together with liquidated damages and the other relief authorized by 29 U.S.C. Section 216(b).

## COUNT II - UNPAID OVERTIME - NEW YORK LABOR LAW

## VIOLATION OF NEW YORK LABOR LAW ARTICLE 19 AND 12 N.Y.C.R.R. SECTION 142-2.2;

## REMEDIES UNDER NEW YORK LABOR LAW SECTION 663

45. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

46. Plaintiff was a nonexempt employee entitled to overtime compensation under New York Labor Law Article 19 and 12 N.Y.C.R.R. Section 142-2.2.

47. Defendants failed to pay Plaintiff one and one-half times her regular rate for hours worked above forty in individual workweeks.

48. Plaintiff seeks unpaid New York overtime for all timely workweeks, liquidated damages, interest, fees, and costs under New York Labor Law Section 663, without duplicative recovery.

## COUNT III - FAILURE TO PAY EARNED COMMISSIONS

## VIOLATION OF NEW YORK LABOR LAW SECTIONS 190(1), 191(3), AND 198(1-a)

49. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

50. The one-percent commission was compensation for Plaintiff's labor, constituted wages within the meaning of New York Labor Law Section 190(1), and was an agreed term of employment rather than a gift or discretionary payment.

51. Plaintiff earned $9,373.78 for the first quarter of 2026 and an additional amount from April 1 through May 19, 2026 that will be calculated from Defendants' records.

52. Defendants failed to pay the earned commissions by the regular payday following Plaintiff's termination, in violation of New York Labor Law Section 191(3).

53. Plaintiff seeks the unpaid commissions, liquidated damages, interest, costs, and other relief authorized by New York Labor Law Section 198(1-a).

## COUNT IV - BREACH OF COMPENSATION AGREEMENT AND POLICY

## NEW YORK COMMON-LAW CLAIM

54. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

55. Stateside, through Griffin, offered Plaintiff compensation equal to one percent of receivables beginning January 1, 2026.

56. Plaintiff accepted through her words and performance, continued performing the covered work, and generated or serviced the receivables on which the commission was calculated.

57. Stateside breached the agreement by withholding the first-quarter commission and the commission earned through Plaintiff's termination.

58. Defendants' records also reflected eight accrued vacation days, and Stateside paid two days at separation but withheld six without applying a consistent basis. To the extent the accrued vacation was payable under Stateside's compensation policy or its application of that policy, Plaintiff pleads in the alternative that Stateside breached by failing to pay the remaining six days.

59. Plaintiff suffered damages of at least $9,373.78, plus the additional commission ascertainable from second-quarter records, six days of unpaid vacation compensation to the extent proved, interest, and other recoverable contract damages.

## COUNT V - PROMISSORY ESTOPPEL - PLEADED IN THE ALTERNATIVE

## NEW YORK COMMON-LAW CLAIM

60. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

61. If the Court determines that no enforceable contract was formed, Stateside, through Griffin, nevertheless made a clear promise that Plaintiff would receive one percent of receivables beginning January 2026.

62. It was reasonable and foreseeable that Plaintiff would rely on a compensation promise made by the company's owner and Chief Executive Officer, particularly where Defendants had previously communicated compensation changes orally.

63. Plaintiff relied on the promise by continuing to perform the collections and receivables work and arranging her finances based on the promised compensation.

64. Plaintiff was injured when Stateside accepted her work but withheld the promised commission.

## COUNT VI - RETALIATION

## VIOLATION OF NEW YORK LABOR LAW SECTION 215(1)(a); REMEDIES UNDER SECTION 215(2)

65. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

66. Plaintiff engaged in protected activity by repeatedly complaining in writing that Defendants were unlawfully withholding earned wages.

67. Defendants knew of Plaintiff's complaints and scheduled the May 19 meeting to address the commission dispute.

68. Defendants terminated Plaintiff within approximately twenty seconds after the meeting began, before any substantive review of her supporting report, and offered a single payment conditioned on a general release.

69. The timing and circumstances plausibly show that Plaintiff's wage complaints were a motivating reason for the termination.

70. Defendants thereby violated New York Labor Law Section 215(1)(a) and caused Plaintiff lost wages, lost benefits, emotional distress, and other recoverable damages for which she seeks relief under Section 215(2).

## COUNT VII - FAILURE TO PROVIDE WAGE STATEMENTS

## VIOLATION OF NEW YORK LABOR LAW SECTIONS 195(3) AND 198(1-d)

71. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

72. From August 4, 2022 through approximately May 31, 2023, Defendants failed to furnish Plaintiff with wage statements containing the information required by New York Labor Law Section 195(3).

73. The violation continued for enough workdays to reach the statutory maximum, subject to any defenses that Defendants may establish.

74. Plaintiff seeks statutory damages under New York Labor Law Section 198(1-d), together with costs and fees as authorized by law.

## COUNT VIII - MONTHLY PAY FREQUENCY

## VIOLATION OF NEW YORK LABOR LAW SECTIONS 190(7) AND 191(1)(d)

75. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth here.

76. Based on her actual primary duties, Plaintiff was a clerical and other worker within the meaning of New York Labor Law Sections 190(7) and 191(1)(d).

77. Defendants paid Plaintiff only monthly rather than on regular paydays not less frequently than semi-monthly.

78. Plaintiff seeks any damages, interest, declaratory relief, costs, and other remedies legally available for this violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

79. Unpaid overtime compensation under the FLSA and New York law in an amount to be determined from complete time and payroll records;

80. The unpaid first-quarter 2026 commission of $9,373.78;

81. The unpaid commission earned from April 1 through May 19, 2026 in an amount to be determined from Defendants' records;

82. Compensation for six accrued vacation days, preliminarily valued at $1,615.38;

83. Contract or promissory-estoppel damages in the alternative;

84. Statutory wage-statement damages up to $5,000;

85. All relief legally available for Defendants' monthly pay-frequency violation;

86. Liquidated damages under federal and New York law to the extent authorized, without duplicative recovery;

87. Back pay, front pay in lieu of reinstatement, lost benefits, and other damages and relief authorized for unlawful retaliation;

88. Compensatory damages, including emotional-distress damages, to the extent authorized by law;

89. Prejudgment interest on all damages and monetary awards to the extent authorized by the New York Labor Law, the New York Civil Practice Law and Rules, and other

applicable law, and post-judgment interest on the entire judgment pursuant to 28 U.S.C. Section 1961;

90. Costs and reasonable attorney's fees, if incurred and recoverable under applicable law; and

91. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution, Plaintiff demands a trial by jury on all issues so triable.

Dated: July 22, 2026

*Respectfully submitted,*

Mayra Matos, Plaintiff Pro Se

10 Fourth Street

Stony Point, New York 10980

Telephone: (772) 332-8152

Email: mayra.matos@ymail.com

14